IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

eSPEED, INC.; CANTOR FITZGERALD,          )
L.P.; and CFPH, L.L.C.,                   )
                                          )
                Plaintiffs,               )
                                          )
        v.                                )      Civil Action No. 03-612-KAJ
                                          )
BROKERTEC USA, L.L.C.; GARBAN,            )
L.L.C., OM TECHNOLOGY AB; and OM          )
TECHNOLOGY (US), INC.,                    )
                                          )
                Defendants.               )

## MEMORANDUM ORDER

### I.    INTRODUCTION

This patent infringement case was tried beginning on February 7, 2005.  (Trial

Transcript ["Tr."], Volume ["Vol."] 1.)  Plaintiffs eSpeed Inc., Cantor Fitzgerald, L.P.,

CFPH, L.L.C., and eSpeed Government Securities, Inc. (collectively, "eSpeed")

accused Defendants BrokerTec USA, L.L.C., Garban, L.L.C., OM Technology AB, and

OM Technology (US), Inc. (collectively, "BrokerTec") of infringing claims 20-23 of U.S.

Patent No. 6,560,580B1 (the "'580 patent").  (Docket Item ["D.I."] 512;Tr., Vol. 1 at 191-

92.)  BrokerTec counterclaimed for a judgment that the '580 patent was invalid, that the

'580 patent was procured by inequitable conduct, and that BrokerTec did not infringe

the patent.  (D.I. 520; Tr., Vol. 1 at 192.)  On February 22, 2005, the jury returned a

verdict finding that the accused Garban GTN system literally infringed claims 20-23 of

the '580 patent, but that those claims were invalid because the patent failed to provide

an adequate written description.  (D.I. 643; Tr., Vol. 11, at 3014:12-3015:20.)  Presently

before me is eSpeed's Motion for Judgment as a Matter of Law or, In the Alternative,

For a New Trial.  (D.I. 649.)  Also before me is BrokerTec's Motion for Judgment as a

Matter of Law on Invalidity and Non-Infringement.  (D.I. 651.)  Jurisdiction over this

matter is proper under 28 U.S.C. §§ 1331 and 1338.  For the reasons that follow, all of

the pending motions will be denied.

## II.    BACKGROUND

The background of this case has been set forth in several prior opinions and

orders, and will not be set forth in detail here.  *See eSpeed, Inc. v. BrokerTec USA,*

*L.L.C.*, 69 U.S.P.Q.2d 1446 (D. Del. 2004) (denying preliminary injunction); *eSpeed,*

*Inc. v. BrokerTec USA, L.L.C.*, 2004 WL 2346141 (D. Del. Sept. 9, 2004) (claim

construction); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004 WL 2346137 (D. Del. Sept.

13, 2004) (granting motion to dismiss for lack of personal jurisdiction as to Defendant

ICAP PLC); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 342 F. Supp. 2d 244 (D. Del. 2004)

(granting-in-part and denying-in-part motion for summary judgment).

eSpeed filed U.S. Patent Application No. 08/766,733 (the "'733 application") in

December of 1996,  (DX 42 at FN 00001792), which issued as U.S. Patent No.

5,905,974 (the "'974 patent") in May of 1999.  (DX9.)  Prior to the issuance of the '974

patent, eSpeed filed a continuation application, U.S. Patent Application No. 09/294,526

(the "'526 application").  The '580 patent issued on May 6, 2003 from the '526

application.  Both patents cover an electronic trading platform used in trading

government securities.[1]  (*See, e.g.*, DX 9 at Col. 1, Lines 6-11.)  eSpeed selected

---

[1] The '974 patent describes an electronic trading system in which participants are
at workstations which are connected by a central server that is "programmed to support
a predetermined trading control logic".  U.S. Patent No. 5, 905,974 at col. 17 l. 64-col.
18 l. 21.  The '974 patent further describes the trading protocol, the kinds of

2

claims 20-23 of the '580 patent to assert against BrokerTec. (Tr., Vol. 1 at 230:6-17;

U.S. Patent No. 6,560,580 at col. 4, lines 4-57.)

The issues of infringement and invalidity were fully aired before a jury during the

two week trial. (Tr., Vol. 1-9.) Concurrently, the parties tried the issue of inequitable

conduct to the court. (Tr., Vol. 1-10.) At the end of trial, the jury returned a verdict

finding that the accused Garban GTN System literally infringed the asserted claims of

the '580 patent, but that the infringement was not willful. (Tr., Vol. 11, 3014:10-23.)

The jury further found that claims 20-23 of the '580 patent were invalid because the

written description was insufficient to support each and every element of those claims.

(*Id*. at 3015:13-20.) The jury further found, however, that BrokerTec had not shown that

the patent was made obvious by or anticipated by the prior art. (*Id*. at 3014:24-

3015:12.) Finally, the jury found that the proper inventors were named on the patent.

(*Id*. at 3015:21-3016:8.)

## III.   STANDARD OF REVIEW

### A.      Judgment as a Matter of Law

"Pursuant to Federal Rule of Civil Procedure 50, judgment as a matter of law

may be granted only when 'there is no legally sufficient evidentiary basis for a

reasonable jury to find for that party on that issue.'" *Bullen v. Chaffinch*, 336 F. Supp.

2d, 342, 346 (D. Del. 2004) (quoting Fed. R. Civ. P. 50(a)).  In assessing the sufficiency

commodities traded, the computer system to implement the protocol, and the method of
trading. *Id*. at col. 18-col. 20. The '580 patent also presents an electronic trading
system, but presents additional trading rules. For example, the '580 patent presents a
trading protocol in which the first two participants in the trade have a period of
exclusivity in which only they can transact trades, but when such period of exclusivity is
over, all other participants can trade. U.S. Patent No. 6,560,580 at col. 20, l. 4-29.

of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The court must determine "whether the record contains the minimum quantum of evidence from which a jury might reasonably afford relief." *Keith v. Truck Stops Corp. of America*, 909 F.2d. 743, 745 (3d Cir. 1990) (quoting *Smollett v. Skating Dev. Corp.*, 793 F.2d 547, 548 (3d Cir. 1986) (internal quotation marks omitted)). In deciding a motion for judgment as a matter of law on patent invalidity, that quantum of evidence must be clear and convincing. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("the inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits"); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149 (Fed. Cir. 2004) ("we must determine whether the jury had substantial evidence upon which to conclude that . . . [the alleged infringer] met its burden of showing invalidity by clear and convincing evidence"). "[A] court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury." *Aloe Coal Co. v. Clark Equipment Co.,* 816 f.2d 110, 113 (3d Cir 1987). "The difference in views between court and the jury is an insufficient basis to enter judgment as a matter of law." *Boyce v. Edis Co.*, 224 F. Supp. 2d 814, 817 (D. Del. 2002).

4

B.    New Trial

Federal Rule of Civil Procedure 59(a) provides, in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of
the issues in an action in which there has been a trial by jury, for any of
the reasons for which new trials have heretofore been granted in actions
at law in the courts of the United States.

The decision to grant or deny a new trial is within the sound discretion of the trial

court and, unlike the standard for determining judgment as a matter of law, the court

need not view the evidence in the light most favorable to the verdict winner. *See Allied*

*Chem. Corp. v. Darflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang*

*Chem. Corp.*, 9 F.3d 282 (3d Cir. 1993). Among the most common reasons for granting

a new trial are: "(1) . . . the jury's verdict is against the clear weight of the evidence, and

a new trial must be granted to prevent a miscarriage of justice; (2) . . . newly-discovered

evidence exists that would likely alter the outcome of the trial . . . ; (3) . . . improper

conduct by an attorney or the court unfairly influenced the verdict; . . . [and] (4) . . . the

jury's verdict was facially inconsistent." *Zarow-Smith v. N.J. Transit Rail Operations*,

953 F. Supp. 581, 584 (D.N.J. 1997) (citations omitted).

## IV.    DISCUSSION

### A.    eSpeed's Motion for Judgment as a Matter of Law on Invalidity Under 35 U.S.C. § 112

At the end of trial, the jury found that claims 20-23 of the '580 patent were invalid

for lack of sufficient written description under 35 U.S.C. § 112. eSpeed argues that, as

a matter of law, the written description was sufficient. The first paragraph of 35 U.S.C.

§ 112 states that "the specification shall contain a written description of the invention,

5

and of the manner and process of making and using it, in such full, clear, concise, and

exact terms as to enable any person skilled in the art to which it pertains . . . to make

and use the same . . . ." 35 U.S.C. § 112. The Federal Circuit has stated that this

requirement exists to require the applicant to "convey with reasonable clarity to those

skilled in the art that, as of the filing date sought, he or she was in possession of the

invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1564 (Fed. Cir. 1991). The

written description requirement raises the question of "whether the application provides

adequate support for the claim(s) at issue; it has also been analyzed in terms of new

matter." *Vas-Cath*, 935 F.2d at 1560 (internal quotations omitted).

Here, eSpeed claims that BrokerTec failed to show by clear and convincing

evidence that the '580 patent was invalid for lack of sufficient written description.  First,

eSpeed asserts that BrokerTec did not show what one of ordinary skill in the art would

have understood in looking at the '733 application. (D.I. 650 at 8.) eSpeed argues

BrokerTec's technical expert, Dr. Martin Rinard, was not a person of ordinary skill in the

art, as he was familiar only with computer systems and not with the rules of securities

trading. (*Id*. at 9-11.) eSpeed claims that Dr. Rinard failed to analyze the patent

application as a whole, improperly focusing instead on one figure of the patent. (*Id*. at

11-13.) Further, eSpeed claims that BrokerTec improperly focused on amendments

made during the prosecution of the '580 patent, rather than looking at the original

disclosure of the '733 application. (*Id*. at 13-19.) eSpeed additionally claims that it

presented unrebutted evidence showing support for claims 20-23 in the '733

application, and that BrokerTec relied on extrinsic evidence which did not support a

6

finding that the written description of the patent was inadequate. (*Id.* at 19-33.) BrokerTec counters by arguing that there was substantial evidence in the record to support the jury's finding of invalidity for lack of a sufficient written description, and it asserts that the jury's finding is premised at least to some extent on credibility determinations. (D.I. 657 at 25-28; 31-25). Furthermore, argues BrokerTec, the '580 patent on its face fails to describe each and every element of claims 20-23. (*Id.* at 28-30.)

eSpeed's arguments are without merit. Contrary to them, the evidence in the record provides a "legally sufficient evidentiary basis for a reasonable jury" to find that the written description was insufficient. *Bullen*, 336 F. Supp. 2d at 346. First, the argument that Dr. Rinard was unqualified to render an opinion is falacious. The Federal Circuit has stated that "[t]he 'person of ordinary skill in the art' is a theoretical construct used in determining obviousness under § 103, and is not descriptive of some particular individual." *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997). In *Endress*, the court relied on the plaintiff's expert witness in coming to its claim construction, and the defendants challenged that reliance, claiming that the expert was not a person of ordinary skill in the relevant art. *Id.* The court rejected the defendants' challenge. *Id.* ("To suggest that the construct applies to particular individuals could mean that a person of *exceptional* skill in the art would be disqualified from testifying as an expert because not [sic] ordinary enough.") (emphasis in original). Likewise, here Dr. Rinard had an adequate understanding of trading, and, more to the point, an exceptional grasp of the requisite programming issues related to

7

trading. He was thus able to render a helpful opinion to the factfinder. *See id.* ("To the extent that the gravamen of defendants' complaint is that [plaintiff's expert] was unqualified to testify as an expert witness at all, the record reflects his substantial credentials as an electrical engineer, and the decision to permit him to testify was well within the discretion of the trial judge.").

Furthermore, eSpeed's argument that Dr. Rinard improperly focused his written description analysis on Figure 8 of the '580 patent and failed to analyze the patent as a whole must fail. The jury was entitled to weigh Dr. Rinard's testimony with the evidence presented by eSpeed and to decide what testimony to credit. The changes made to figure 8 of the '526 application, presented in part through Dr. Rinard's testimony, are just part of the evidence presented by BrokerTec regarding the new matter added to the application. (D.I. 657, Exhibit 1; Tr. at 2261:15-2269:21.) The jury was entitled to weigh this evidence along with all of the other new matter evidence presented by eSpeed and BrokerTec.

The jury was entitled to rely on the testimony of Dr. Rinard and to reject the testimony of any witness deemed not to be credible. Credibility is solely an issue for the trier of fact. *See, e.g.*, *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 787- 88 (Fed. Cir.1988) ("Determining the weight and credibility of the evidence is the special province of the trier of fact."). Dr. Rinard testified that in the '733 application, which issued as the '974 patent, he was unable to find any disclosure to support claim 20 of the '580 patent. (Tr., Vol. 7 at 2260:18-2261:14.) The jury was entitled to credit this testimony, and reject contrary testimony presented by eSpeed.

8

As for the argument that other "new matter" evidence offered by BrokerTec was inadequate, again eSpeed is incorrect. BrokerTec presented, for example, its Exhibit ("DX") 115, a note of eSpeed's own patent counsel, which asks at a critical point in claim 20, "where is this in the patent?". (DX 115 at FN004128-FN004129.) According to BrokerTec, this exhibit provides evidence that supports the jury verdict finding that claims 20-23 of the '580 patent presented new matter.[2] (D.I. 657 at 34-35.) The changes made to the specification and to figure 8 of the '526 application also provided evidence from which the jury could fairly conclude that new matter was added to the disclosure. (D.I. 657, Exhibit 1.)

The testimony and documentary evidence discussed here, along with other evidence that is in the extensive record of this case,[3] show that there was a legally sufficient evidentiary basis for the jury's verdict.

B.    eSpeed's Motion for a New Trial

As an alternative to their motion for judgment as a matter of law, eSpeed presents three arguments for a new trial on the issue of invalidity for lack of written description. First, eSpeed argues that the jury's verdict was against the great weight of

---

[2] As they did at trial, eSpeed disputes the admissibility of DX115. However, despite eSpeed's objections, I find that DX115 is relevant to the issue of whether the original patent disclosure in the '974 patent fully described what is claimed in the '580 patent. (See also Tr., Vol. 3, 902:24-912:13.) Furthermore, although this evidence is prejudicial to eSpeed, I find, as I did at trial, that its probative value is not substantially outweighed by the danger of unfair prejudice. (See id.) Therefore, DX115 was properly admitted at trial, and the jury could have properly considered it. (Tr., Vol. 4, 1136:23-1137:20.)

[3] I emphasize that these pieces of evidence were chosen as examples from an extensive record to show that the jury's verdict was supported.

9

the evidence. (D.I. 650 at 33-34.) Second, it contends that BrokerTec misrepresented the purpose of Dr. Rinard's testimony to the court and that such misrepresentation is itself grounds for a new trial. (*Id.* at 34-38.) Finally, eSpeed claims that DX115, the "where is this in the patent" note, was erroneously admitted into evidence, and that DX115 was so irrelevant, prejudicial, and confusing to the jury that a new trial is warranted. (*Id.* at 38-40.)

The first and last of these three arguments have already been addressed in my rejection of eSpeed's motion for judgment as a matter of law as to invalidity under § 112. Although the standard for granting a motion for a new trial is less stringent than the standard for granting judgment as a matter of law, the reasons presented above are sufficient to defeat a motion for a new trial on those grounds. As was described above, the jury's verdict on invalidity under § 112 is supported by legally sufficient evidence. It was not against the great weight of the evidence. No miscarriage of justice will occur if the verdict is allowed to stand. Furthermore, DX115 was not erroneously admitted into evidence and, as was described above, *see supra* note 2, the decision to admit it will not be overturned here.

eSpeed's argument that BrokerTec misrepresented the purpose of Dr. Rinard's testimony to the court does not present grounds for a new trial. eSpeed again argues that Dr. Rinard is not a person of ordinary skill in the art, and was not qualified to testify about what trading rules were disclosed by the '733 application. (D.I. 650 at 34-36.) Furthermore, eSpeed argues that BrokerTec's counsel told the court that Dr. Rinard would not be offering a general opinion on the adequacy of the '733 application's disclosure, but instead would provide a narrow opinion on "'what behaviors would you

10

get' 'if you built a computer system according to the teachings of the patent.'" (D.I. 650 at 36 *quoting* Tr. at 1413:14-1415:17.)  Given the Federal Circuit's determination that the person of ordinary skill in the art is a hypothetical person, see *Endress + Hauser, Inc.*, 122 F.3d at 1042, and my decision that Dr. Rinard was qualified to render a helpful opinion to the factfinder, the first argument must fail.  The fact that Dr. Rinard was not an expert in trading rules does not disqualify him from rendering an opinion on the sufficiency of the disclosure of the '733 application.  Furthermore, Dr. Rinard's testimony focused on what he understood figure 8 (a flowchart) from the '733 application to describe, based on how the computer system worked.  (Tr. 2261:15-2269:21.)  This testimony was arguably limited to what was represented by BrokerTec's counsel.

Even if BrokerTec's counsel had understated the nature of Dr. Rinard's testimony, I find that testimony was properly admitted, as described above. Furthermore, for a new trial to be granted based on an improper remark of counsel, the test is "whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements."  *Waldorf v. Shuta*, 142 F.3d 601, 628 (3d Cir. 1998) (citations and internal quotations omitted).  It is not reasonably probable that BrokerTec's counsel's alleged misrepresentations influenced the jury.  Therefore, Dr. Rinard's testimony was properly admitted and could be relied on by the jury. Because eSpeed has not met the standard for a new trial, its motion will be denied.

C.     BrokerTec's Motion Judgment as a Matter of Law on Invalidity Under 35 U.S.C. § 103

Although the jury found that claims 20-23 of the '580 patent were invalid for lack of sufficient written description, the jury also found that these claims were not invalid for obviousness under 35 U.S.C. § 103. (Tr., Vol. 11 at 3014:24-3015:5.) BrokerTec has moved for judgment as a matter of law that these claims were obvious. In its motion, BrokerTec argues that the jury verdict on obviousness is advisory and that the court must make its own determination on obviousness. (D.I. 652 at 5-6.) However, BrokerTec has cited no case law, and I can find none, in support of its contention that where "defendants have moved under Fed. R. Civ. P. 39(a)(2) to strike plaintiffs' jury demand as to obviousness, any jury verdict on that issue is solely advisory." (D.I. 652 at 5.)

Instead, BrokerTec cites case law that supports the proposition that issues of law are tried to the court, while issues of fact are tried to a jury. *See, e.g.*, D.I. 652 at 5 (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999) (finding "that the issue whether a landowner has been deprived of all economically viable use of his property is a predominantly factual question", and therefore that the issue of eminent domain was properly given to a jury)). The Supreme Court has held, however, that "[w]hile the ultimate question of patent validity is one of law, the § 103 condition, [obviousness] . . . lends itself to several basic factual inquiries." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966) (internal citation omitted). "Facile phrases like 'facts are for the jury; law is for the court' appear nowhere in the Rules [of Civil Procedure,]" H. Markey, On Simplifying Patent Trials, 116 F.R.D. 369,

12

371 (1987), and do little to advance the analysis on this point.  Such phrases fail to

acknowledge the long standing practice, approved by the Federal Circuit, of submitting

the question of obviousness to the jury with special interrogatories.  *Cf. Am. Hoist &*

*Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1361 (Fed. Cir. 1984) ("A district court

may not solicit *only* a legal conclusion [on obviousness] from the jury . . . ." (emphasis

added)).  The jury's verdict on obviousness in this case thus was not merely advisory

and must be reviewed under the standard for judgment as a matter of law.  Fed. R. Civ.

P. 50(a).

Section 103 of Title 35 states that "a patent may not be obtained though the

invention is not identically disclosed or described . . . if the differences between the

subject matter sought to be patented and the prior art are such that the subject matter

as a whole would have been obvious . . ." 35 U.S.C. § 103(a).  BrokerTec argues that

the invention of the '580 patent is obvious based on two sets of facts.  First, BrokerTec

relies on the fact that, in a reissue application, the Examiner rejected claims reciting

substantially the same subject matter as claims 20-23 of the '580 patent.  (D.I. 652 at 8,

Exhibit 2.)  Second, BrokerTec argues that the prior art presented to the jury showed

the '580 patent to be obvious.  That prior art included U.S. Patent No. 5,243,331, a

commercial embodiment of that patent, and Cantor Fitzgerald's own prior trading

platform, the so-called "Super System." (*Id.* at 11-28.)

Contrary to BrokerTec's assertions, there is a legally sufficient evidentiary basis

for the jury to have found that claims 20-23 of the '580 patent were not invalid on

grounds of obviousness.  First, the evidence regarding the reissue application was not

13

presented at trial, and thus will not be considered here.[4]  All of the other evidence that

BrokerTec relies on was presented to the jury, which found that evidence wanting.  The

jury was entitled to weigh BrokerTec's evidence, as well as the evidence presented by

eSpeed, in reaching its verdict as to obviousness.  eSpeed presented sufficient

evidence on which the jury could rely in rejecting BrokerTec's obviousness arugments.

For example, as to the Super System, Mr. Bijoy Paul testified about a debate over how

the 1993 Super System would work.[5]  (Tr., Vol. 4 at 1092:8-1094:2.)  The jury was

entitled to rely on that testimony in deciding that claims 20-23 of the '580 patent were

not obvious.  Therefore, BrokerTec's motion for judgment as a matter of law on

invalidity is denied.

D.    BrokerTec's Motion for Judgment as a Matter of Law on Non-Infringement

As with its motion for judgment as a matter of law on invalidity, BrokerTec seeks

a change in the law on infringement.  (D.I. 652 at 35-40.)  BrokerTec does not argue

---

[4] BrokerTec concedes that "what the Patent Office does or says is not evidence and should not be presented to the jury as such." (D.I. 662 at 4.)  BrokerTec claims, however, that the court can consider the Examiner's reasoning from the reissue application in its own determination on obviousness. (*Id*. at 4-5.)  Because I have already rejected BrokerTec's argument that the jury's verdict on obviousness is advisory, the reissue application will not be considered here, as the jury did not consider it at trial.

[5] Mr. Paul testified that some at Cantor Fitzgerald wanted to fully automate the Super System in 1993, such that human beings would be "irrelevant," while others wanted to develop a system in which trades made by humans could be entered into a system to produce an electronic record of the trade. (Tr., Vol. 4 at 1092:8-1094:2.)  Ultimately, the decision was made that  the Super System would "not . . . make the real decision . . . the human beings are still going to make a decision.  And they're simply going to key into the system what they did." (*Id*. at 1093:1-6.)  The jury could have relied on this testimony in deciding that the Super System operated differently from the system claimed in the '580 patent, which provided for automated electronic trading.

that the accused Garban GTN system is outside the literal meaning of the claims of the '580 patent. Instead, it argues that eSpeed had the burden to show not only literal correspondence with the meaning of the claims but also that the Garban GTN system "does the same work, in substantially the same way, and achieves the same results" as the patented invention. (D.I. 652 at 40.) In support of its position, BrokerTec cites *Westinghouse v. Boyden Power Brake Co.*, 170 U.S. 537 (1898) and *Holland Furniture Co. v. Perkins Glue Co.*, 277 U.S. 245 (1928), arguing that the adoption of the 1952 Patent Act did not change the definition of infringement, but "left intact the entire body of case law on direct infringement." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 342 (1961). However, BrokerTec does nothing to refute the modern understanding of infringement, in which literal correspondence between the words of the claim and the accused device is sufficient for a finding of infringement. *See, e.g., Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) ("[t]he invention is defined by the claims") (internal quotation omitted). BrokerTec does not dispute that the Garban GTN system literally corresponds with the words of claims 20-23 of the '580 patent as construed. (D.I. 652 at 35.) Therefore, its motion for judgment as a matter of law of non-infringement must be denied.

15

## V.    CONCLUSION

Accordingly, eSpeed's Motion for Judgment as a Matter of Law and its Motion for

a New Trial (D.I. 649) are DENIED, and BrokerTec's Motions for Judgment as a Matter

of Law on Invalidity under 35 U.S.C. § 103 and Non-Infringement (D.I. 651) are

DENIED.

UNITED STATES DISTRICT JUDGE

December 5, 2005
Wilmington, Delaware

16